UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 24-CV-21516-WILLIAMS/GOODMAN

ROADGET BUSINESS PTE. LTD.,

     Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

     Defendants.

_____/

REPORT AND RECOMMENDATIONS ON
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (the "Application"). [ECF No. 31]. United States District Court Judge Kathleen M. Williams referred the Application to me for a hearing and a report and recommendations. [ECF No. 33].

Plaintiff Roadget Business Pte. Ltd. ("Plaintiff" or "Roadget") moves for entry of a preliminary injunction against Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule A hereto (collectively "Defendants"),[1]

---

[1]     The defendants in this action are: Shenyang Leidong Technology Co., Ltd. (Defendant No. 1 d/b/a "Sporlike Plus Size") ("Sporlike"); Quanzhou Meichang Garment Co., Ltd. (Defendant No. 2 d/b/a "Meichang") ("Meichang"); and Guangzhou Tianhe District Tianyuan Miaomiao Clothing Store (Defendant No. 3 d/b/a "YUEFS") ("YUEFS").

and an entry of an order restraining the financial accounts used by Defendants, pursuant to

S.D. Fla. L. R. 7.1 and Fed. R. Civ. P. 65.

For the following reasons, the Undersigned **RESPECTFULLY RECOMMENDS** that

Plaintiff's Application be **DENIED WITHOUT PREJUDICE**.

I.      **Factual Background**

This is a copyright infringement case in which Plaintiff alleges that Defendants,

through their individual online-based seller stores, are advertising, promoting, offering for

sale, or selling goods using or bearing what Plaintiff has determined to be infringements of

its registered copyrights ("Roadget Copyrights").

Plaintiff owns SHEIN, a popular online fashion and lifestyle retailer. [ECF No. 31, p.

2]. This retailer "sells apparel, beauty products, home goods, pet supplies, and a variety of

other products" through its website and mobile application. *Id.*

Roadget owns copyrights registered with the United States Copyright Office to

protect its original photographs, including the four photographs at issue in this case. The

Roadget Copyrights are listed in the chart below:

| Copyright Reg. No. | Title of Work | Effective Date |
|---|---|---|
| VA 2-390-161 | sf2211053728228681 (Photographs) | Apr. 8, 2024 |
| VA 2-390-148 | sw2111256719666663 (Photographs) | Apr. 8, 2024 |
| VA 2-390-242 | sw2212217214250407 (Photographs) | Apr. 9, 2024 |
| VA 2-390-229 | sz2306018222704808 (Photographs) | Apr. 9, 2024 |

Plaintiff discovered that Defendants "deliberately and unlawfully used virtually identical copies of the Roadget Copyrights to advertise, promote, offer to sell, and sell apparel without authorization." *Id.* at 3. Plaintiff never assigned or licensed its Roadget Copyrights to any Defendants. [ECF No. 24, ¶ 19]. As part of its investigation into Defendants, a member of Plaintiff's team confirmed that each Defendant's "product link included at least one image that is virtually identical to one of the Roadget Copyrights," that each Defendant "offered shipping" to Florida, and that each Defendant "accepted payment in U.S. dollars from U.S. bank accounts." [ECF No. 7-11, ¶¶ 7, 8].

According to Plaintiff, Defendants' actions have irreparably damaged its goodwill, market share, and reputation. Roadget sought, *ex parte*, a temporary restraining order ("TRO") to, among other things, freeze all financial accounts Defendants owned, which this Court granted and extended on June 28, 2024, and August 9, 2024, respectively. [ECF Nos. 27; 51].

The TRO directed the third-party platform, Temu, to disable Defendants' product listings that used the infringing photographs, freeze all accounts connected to Defendants, and produce sales data related to the accused product listings and Defendants' accounts. [ECF No. 27, pp. 14–15]. In response, the third-party platform produced data detailing U.S. sales for the accused product listings and froze asset amounts for each Defendant. [ECF No. 57-4, ¶ 8].

Plaintiff filed the Application because, "[i]f the TRO expires and Defendants' assets are unfrozen, [then] they may continue to infringe the [Roadget Copyrights] and move their assets to offshore bank accounts, eliminating Roadget's ability to obtain relief." [ECF No. 31, p. 1]. Defendants filed a response, Plaintiff filed a reply, and the Undersigned held a hearing[2] where the parties presented their motion arguments. [ECF Nos. 57; 59; 69].[3] Plaintiff relies on the same submissions it provided the Court in reference to its TRO motion, including declarations from its legal counsel, Yuval Mor, and its in-house legal counsel, Tim Wei. [ECF Nos. 7-11, 7-12].

## II.   <u>Legal Standard and Analysis</u>

In order to obtain a preliminary injunction, a party must demonstrate: "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

---

[2]     The Undersigned held this hearing ("Hearing") on September 24, 2024. [ECF No. 69]. Any citations to the Hearing transcript will appear as "Hr'g Tr."

[3]     Pursuant to the Hearing, the Undersigned issued an Order requiring the parties to submit proposed reports and recommendations on the Application. [ECF No. 68]. Both parties timely complied, and the Undersigned reviewed and took into consideration both submissions in writing this Report and Recommendations. [ECF Nos. 73; 80].

*Substantial Likelihood of Success on the Merits*

"To establish a prima facie case of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Based on the Application, both declarations, and the Complaint, the Undersigned finds that Plaintiff has established a prima facie case of copyright infringement and consequently demonstrated a high likelihood of success on the merits.

Plaintiff asserts that it "owns all exclusive rights in the copyrights for the Roadget Copyrights, which are registered with the U.S. Copyright Office." [ECF No. 31, p. 5]. It contends that Defendants "unlawfully used virtually identical copies of the Roadget Copyrights to advertise, promote, offer to sell, and sell apparel without authorization." *Id*. at 3. The screenshot attachments to Plaintiff's Complaint together with the links included in its attached Schedule A show Defendants' online stores selling products that look identical to the Roadget Copyrights. [ECF No. 24, pp. 4–5; 14–15.]

Defendants contest the validity of the Roadget Copyrights because the "publication dates are inconsistent with the dates listed in the asserted copyrights" and that Plaintiff's in-house legal counsel's declaration is inconsistent with the asserted copyrights. [ECF No. 57, pp. 10–11]. They argue that SHEIN's source code data reflects the following listed dates of first publication:

| Roadget Copyright | Listed Date of First[4]Publication | Source Code Publication Date | Effective Date |
|---|---|---|---|
| VA 2-390-161 | January 11, 2023 | November 25, 2022 | Apr. 8, 2024 |
| VA 2-390-148 | March 12, 2022 | December 21, 2021 | Apr. 8, 2024 |
| VA 2-390-242 | March 22, 2023 | March 13, 2023 | Apr. 9, 2024 |
| VA 2-390-229 | July 8, 2023 | June 27, 2023 | Apr. 9, 2024 |

Plaintiff contends that Defendants argument is conjectural and that "Defendants offered no evidence that the [source code numbers] correspond to the date of publication." [ECF No. 59, p. 3]. The Undersigned agrees. Defendants cite two cases where the defendants successfully challenged a plaintiff's copyright registration and associated claims of ownership. However, Defendants' actions parallel neither of the two cited cases, and, unlike here, both cases involved contract interpretation.[5] Here, Defendants merely provided a list of source codes without any additional evidence substantiating their argument.

---

[4]     *See* ECF Nos. 7-1–7-4.

[5]     For example, in *Dellacasa, LLC v. John Moriarty & Assocs. of Fla., Inc.*, No. 07-21659-CIV, 2008 WL 299024, at *12 (S.D. Fla. Feb. 1, 2008), the defendant provided the Court with testimony from multiple witnesses and copies of the contracts between the parties; in *Dubay v. King*, No. 3:17-CV-0348-J-20MCR, 2017 WL 4863110, at *2 (M.D. Fla. July 26, 2017), the defendant provided the court with articles and certificates of dissolution, a certificate of incorporation, and successfully argued that the plaintiff's copyrighted works fell outside of the Copyright Act's statute of limitations.

Additionally, as Plaintiff highlights, "even if publication actually occurred a few weeks earlier than the date listed in the registration, that would not rebut the presumption of ownership, because the difference is trivial and unrelated to ownership." *Id*. (citing *MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1219 (11th Cir. 2021) ("A 'certificate of a registration made before or within five years after first publication of the work' constitutes 'prima facie evidence of the validity of the copyright and of the facts stated in the certificate.' [17 U.S.C.] § 410(c). The date of publication is a 'fact[ ] stated in the certificate.'"). Because the dates listed in the Roadget Copyrights are presumed to be true, Defendants have the burden to rebut that presumption; and they have failed to do so.[6]

Therefore, Plaintiff has sufficiently shown a substantial likelihood of success on the merits of its copyright claim because it owns the Roadget copyrights (which are valid) and because Defendants do not dispute that they copied those photographs. *See* Hr'g Tr. at 23:7–9 ("We don't have an issue with the copying element of the copyright [infringement]. There is no question that the photos are identical, if not almost identical . . . .").

*Irreparable Injury*

---

[6]     Defendants' argument that Mr. Wei's declaration illustrates a discrepancy that clouds Plaintiff's claim of ownership is equally as unavailing because: (1) the Roadget Copyrights reflect that Plaintiff is the owner by virtue of written agreement; (2) the author of the photographs is one of Plaintiff's affiliates; (3) Plaintiff hired its affiliate to create the photographs *for* Plaintiff; (4) Mr. Wei's declaration is consistent with those three points; and (5) Defendants did not submit any evidence aside from unnecessary attorney rhetoric (*i.e.*, "**has Roadget's pre-suit diligence (if any) uncovered** an inaccuracy of ownership in these registrations, thus preventing an officer of the court from making a definitive statement?" [ECF No. 57, p. 7 (emphasis added)]) to support their argument.

Plaintiff argues that it will suffer "substantial irreparable harm" if its Application is not granted because it will suffer a loss of customers, goodwill, and monetary relief because of "the likelihood that a defendant will never pay." [ECF No. 31, p. 6]. Defendants contend that Plaintiff failed to show a "substantial likelihood of irreparable harm" because the harms listed are speculative. [ECF No. 57, p. 8].

They state that "even if Plaintiffs establish a likelihood of success on the merits, the absence of *a substantial likelihood of irreparable injury* would, standing alone, make preliminary injunctive relief improper." *Id*. (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (emphasis in Response; other citations omitted). Technically, that is an accurate quote, but most Eleventh Circuit cases do not require a **substantial** likelihood of irreparable injury. Instead, Courts in our Circuit require the following:

> "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Sampson v. Murray*, 415 U.S. 61, 88, 94 S. Ct. 937, 952, 39 L. Ed. 2d 166 (1974). A showing of irreparable harm is "the *sine qua non* of injunctive relief." *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir. 1978). **The injury must be "neither remote nor speculative, but actual and imminent".** *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989). An injury is "irreparable" only if it **cannot be undone through monetary remedies**. "The key word in this consideration is irreparable. **Mere injuries, however substantial**, in terms of money, time and energy necessarily expended in the absence of a stay, **are not enough**. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90, 94 S. Ct. at 953; *accord [United States v. Jefferson Cnty.*, 720 F.2d 1511, 1520 (11th Cir. 1983)].

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (emphasis added). *See also Snook v. Tr. Co. of Ga. Bank of Savannah*, 909

F.2d 480, 487 (11th Cir. 1990); *Flowers Indus. v. F.T.C.*, 849 F.2d 551, 552 (11th Cir. 1988); *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994).

In *Siegel*, the case Defendants cite to support their "substantial likelihood of irreparable harm" argument, the Eleventh Circuit found that the plaintiffs "did not meet their burden of showing that **immediate** irreparable harm would result if preliminary injunctive relief were not entered" because they failed to "demonstrate a threat of **continuing** irreparable harm[;]" and because their perceived threat of future injury was **speculative**. 234 F. 3d at 1177, 1178 (emphasis added).

Therefore, if a harm is: (1) actual and imminent; (2) cannot be undone through monetary remedies;[7] and (3) supported with evidence, then it is an irreparable injury. *See City of Jacksonville, Fla.*, 896 F.2d at 1285; *Snook*, 909 F.2d at 487 ("The plaintiffs' failure to document Mr. Snook's assertion of financial hardship supports a finding of no irreparable harm."); *Siegel*, 234 F.3d at 1179 ("Because proof of irreparable injury is an indispensable prerequisite to a preliminary injunction, [the] [p]laintiffs are not entitled to a preliminary injunction[.]").

Therefore, the Court will assess the Application using "irreparable harm" as one of the four factors (and not the substantial irreparable harm" language urged by Defendants).

Plaintiff first argues it will suffer irreparable harm without an injunction because of

---

[7]    As previously stated, "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson*, 415 U.S. at 90.

the likelihood that Defendants will never pay it any Court-ordered damages. [ECF No. 31,

p. 6]. Plaintiff states that Defendants are essentially anonymous and live outside the United

States. *Id*. "None of [them] have authorized representatives or phone numbers, and for

their location, third-party Temu could provide only the link to the Temu webpage on

which the infringing photos were displayed. [Defendants'] emails consist of a string of

numbers at a general Chinese email service." *Id*.[8]

Pursuant to Defendants' attached declarations, Defendants are not anonymous, they

have authorized representatives, and physical addresses available for Plaintiff's viewing

on their Temu webpages. [ECF Nos. 57-1–57-3]. One Defendant even has a valid[9]

trademark registered with the United States' Patent and Trademark Office ("USPTO").

[ECF No. 57-1, ¶ 2]. Plaintiff disagrees and highlights how, in the Temu declaration, the

columns for "authorized individual representing the company" and the "phone number of

the authorized individual representing the company" are all "unknown." [ECF No. 59, p.

6 (quoting ECF No. 57-4)]. Plaintiff then argues that the Chinese government business

---

[8]     Plaintiff raised this argument again during the Hearing and added the fact that the
email addresses Defendants provided to Temu "all appear to be personal email accounts
with different associated names that do not match the information the company provided."
Hr'g Tr. 12:2-25; 13:1-22. However, in its Application, as stated here, Plaintiff described those
emails as emails that "consist of a string of numbers at a general Chinese email service."
[ECF No. 31, p. 6].

[9]     *See* the USPTO's status page on Defendant No. 1's trademark,
https://tsdr.uspto.gov/#caseNumber=87942447&caseSearchType=US_APPLICATION&case
Type=DEFAULT&searchType=statusSearch. (last visited October 3, 2024).

registry is unavailing but fails to cite to any evidence (*i.e.*, screenshots, links, declarations, etc.) supporting its attorney's argument. Plaintiff's contention that Defendants will never pay (and that this is enough to establish irreparable harm) is equally as unsupported.

Plaintiff's Application quotes the Eleventh Circuit in stating, "[e]quity courts have long recognized 'extraordinary circumstances,' including the likelihood that a defendant will never pay, as one way to 'give rise to the irreparable harm necessary for a preliminary injunction.'" *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1359 (11th Cir. 2019) (quoting 11A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013)). [ECF No. 31, p. 6]. In the *Askins & Miller* case, the Eleventh Circuit found that the defendants ignored years' worth of requests from the plaintiff, including lawsuits and liens, to comply with their employment tax obligations. *Id.* at 1352–54. The *Askins & Miller* Court also found that the defendants had "a proclivity for unlawful conduct." *Id.* at 1360. The Eleventh Circuit based its decision on the case's history and evidence provided.

Here, Plaintiff heavily relies on attorney rhetoric to support its argument that Defendants would never pay a monetary judgment.[10] There is nothing in the Application about any Defendants' past behavior, any previous attempts to obtain relief from their copyright infringement, or any financial account records that illustrate elusive conduct.

---

[10]     Plaintiff additionally cites to two cases *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) and *Canon Inc. v. GCC Int'l Ltd.*, 450 F. Supp. 2d 243, 255–56 (S.D.N.Y. 2006). However, neither case is binding on this Court (nor within the same judicial district or circuit).

Plaintiff's allegation mimics those made by the plaintiffs in *Tang v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule A*, No. 21-14431-CIV, 2022 WL 1664116, at *3 (S.D. Fla. Feb. 28, 2022) ("[The] [p]laintiff claims, without differentiation or corroboration, that '[the] [d]efendants' as a group are likely to move their assets to offshore accounts to preemptively frustrate any future collection efforts should he obtain a favorable final judgment in this action. This generalized concern is inadequate to support the broad asset freeze sought in this case.") and *Wang v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 8:23-CV-2787-VMC-AAS, 2024 WL 3402460, at *3 (M.D. Fla. June 25, 2024), *report and recommendation adopted sub nom. Wang v. Partnerships & Unincorporated Associations Identified on Schedule A & Jin LV*, No. 8:23-CV-2787-VMC-AAS, 2024 WL 3520866 (M.D. Fla. July 24, 2024)("Mr. Wang's 'generalized concern' of frustration of future collection efforts is inadequate to support the broad asset freeze sought here.").

Plaintiff then states that if an injunction is not issued, then it will suffer a loss of goodwill and customers. [ECF No. 31, p. 6].[11] But, as Defendants argue, there is nothing

---

[11]   During the Hearing, the Undersigned informed Plaintiff's counsel that, in reference to this argument, I was looking for something along the lines of:

> [F]or example, "well, Judge, we know that [ ] [D]efendants' infringing conduct has directly impacted our clients because the sale of our products for the three months before the infringement were X dollars on average, per month, month after month, for several months, and when they started using or abusing the copyrighted photographs, our sale decreased by between 30 and 50 percent." Do you have anything like that?

Hr'g Tr. 16:12-20. Plaintiff's counsel responded that he did not have anything like that, and he acknowledged that the necessary information would come from Plaintiff's records and

illustrating how Plaintiff will (or has) suffer(ed) a loss of goodwill. Plaintiff responds that "courts have found irreparable harm in copyright cases based on the loss of goodwill in similar circumstances." [ECF No. 59, p. 7]. Plaintiff follows that argument by citing three cases, but **none** of those cases are similar. The first two[12] are cases where the defendants did not participate in the preliminary injunction litigation, and in the last case, the plaintiff provided the court with evidence including "published comments by consumers that they thought they were purchasing a Venus product, based upon the [i]mage appearing on the Wish Website, but were disappointed to receive a "knock-off" product of inferior quality." *Venus Fashions, Inc. v. ContextLogic, Inc.*, No. 3:16-CV-907-J-39MCR, 2017 WL 2901695, at *29 (M.D. Fla. Jan. 17, 2017).

Here, "Plaintiff has not shown any harm to date, [ ] by evidence of . . . consumer confusion, that independently warrants the issuance of an injunction against [D]efendant[s]." *Bell Lab'ys, Inc. v. Colonial Prod., Inc.*, 644 F. Supp. 542, 550 (S.D. Fla. 1986). Yes, the images Defendants use to sell their products are practically identical to Roadget's Copyrights. However, the Application does not cite to anything like online reviews, customer declarations, or witness testimony that indicate a loss of goodwill arising from the purchasing of Defendants' products. Plaintiff must show that "irreparable harm is

---

*not* Defendants'. Hr'g Tr. 16:21–25; 17:1–10.

[12]     *YZ Prods., Inc. v. Individuals & Unincorporated Associations Identified on Schedule A*, No. 23-62268-CIV, 2024 WL 670581, at *2 (S.D. Fla. Jan. 3, 2024) and *TWOWS, LLC v. Individuals Identified on Schedule "A,"* No. 0:22-CV-60729-WPD, 2022 WL 2805160, at *2 (S.D. Fla. May 27, 2022).

'likely,' not merely possible, in the absence of an injunction." *Venus Fashions, Inc.*, 2017 WL 2901695 at *29 *(citing Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x. 981, 985 (11th Cir. 2016)). But without any support to rely on, this unsupported fear is just speculative.

As previously stated, Plaintiff also argues that if an injunction is not entered, then it will suffer a loss of customers. The Undersigned finds that this argument is plagued with the same deficiencies as the other two listed above. Plaintiff does not cite to or reference any evidence showing that it has lost (or will likely lose) customers as a result of Defendants' infringement. "A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012)[13] (citing *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (*per curiam*) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal."); *Kelliher v. Veneman*, 313 F.3d 1270, 1274 n.3 (11th Cir. 2002) (stating that because the appellant "only mentioned his EEOC retaliation claim in the summary of the argument in his initial brief" and "made no

---

[13]     Abrogated on other grounds by *United States v. Durham*, 795 F.3d 1329, 1331 (11th Cir. 2015) ("Accordingly, we hold that where there is an intervening decision of the Supreme Court on an issue that overrules either a decision of that Court or a published decision of this Court that was on the books when the appellant's opening brief was filed, and that provides the appellant with a new claim or theory, the appellant will be allowed to raise that new claim or theory in a supplemental or substitute brief provided that he files a motion to do so in a timely fashion after (or, as in this case, before) the new decision is issued.").

arguments on the merits as to this issue, the issue is deemed waived")).

In its reply, Plaintiff argues the following:

Defendants' infringing conduct, however, risks irreversible price erosion, loss of customer goodwill, and loss of market share. Before Defendants were forced to cease display of the online listings at issue, Defendants sold their products at prices significantly lower than the corresponding SHEIN product offerings. Accordingly, Defendants' conduct, if left unchecked, will divert customers to Defendants' product offerings, associate SHEIN's products with cheaper products that SHEIN does not control, lead to the permanent devaluation of SHEIN's products in the marketplace, and divert the customer base that Roadget has invested significant resources in cultivating.

[ECF No. 59, p. 7]. Plaintiff's argument is problematic because it includes arguments that were not raised in the Application, and because it *still* fails to cite to any evidence like declarations or financial records supporting it. Actual evidence of "irreversible price erosion" or "loss of market share" are absent from the Application.

Plaintiff also supplements its new argument with a cite to *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1360 (S.D. Fla. 2016), *aff'd*, 708 F. App'x 998 (Fed. Cir. 2017). But, aside from *Aguila* being an out-of-circuit case, there the plaintiff provided evidence sufficient for the court to conclude that "by selling the Accused Product at one-fourth the price of the Edge Machine, Aguila threatens to irreversibly erode the price the market will bear for Edge's products." *Id*. As previously stated, the Application is void of any evidence supporting this notion. At no point does Plaintiff mention the price difference between the products or how its sales have been affected by the unlawful infringement.

Even if Plaintiff had included new evidence in its reply, the Court would still not

consider it because "a reply memorandum may not raise new arguments or evidence, particularly where the evidence was available when the underlying motion was filed and the movant was aware (or should have been aware) of the necessity of the evidence." *Bell N. Rsch., LLC v. HMD Am., Inc.*, No. 1:22-CV-22706, 2023 WL 8455938, at *4 (S.D. Fla. Nov. 14, 2023), *report and recommendation adopted*, No. 22-22706-CIV, 2023 WL 8449590 (S.D. Fla. Dec. 6, 2023) (quoting *Baltzer v. Midland Credit Mgmt., Inc.*, No.14–20140–CIV, 2014 WL 3845449, at *1 (S.D. Fla. Aug. 5, 2014)) (*citing Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345 (S.D. Fla. 2012); *TCC Air Servs., Inc. v. Schlesinger*, No. 05-80543-CIV, 2009 WL 565516, at *7 (S.D. Fla. Mar. 5, 2009)).

At bottom, Plaintiff has failed to meet this second element of irreparable harm because its Application is mostly based on vague speculation and attorney rhetoric. Without this second element, Plaintiff is not entitled to have its Application granted, and the Undersigned consequently has no need to address the remaining two elements. *See City of Jacksonville*, 896 F.2d at 1285 (reversing preliminary injunction based solely on the plaintiff's failure to show irreparable injury); *Snook*, 909 F.2d at 486 (affirming denial of preliminary injunction even though the plaintiff established likelihood of prevailing because the plaintiff failed to meet burden of proving irreparable injury); *Ne. Fla. Chapter of the Ass'n of Gen. Contractors*, 896 F.2d at 1285 ("We need not address each element because we conclude that no showing of irreparable injury was made.").

III.   **Conclusion**

For all of the reasons mentioned above, the Undersigned **respectfully recommends** that Judge Williams **deny without prejudice** Plaintiff's Application [ECF No. 31] and **lift** the TRO, including the current asset freeze.[14] Plaintiff's Application fails to meet all the necessary elements for a preliminary injunction. *Siegel*, 234 F.3d at 1176 ("Significantly, even if [the] [p]laintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper.").

IV.   **Objections**

The parties will have fourteen days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests

---

[14]   If Judge Williams were to adopt this Report and Recommendations and if Defendants were to resume their infringing activity (which they did not deny doing but which they stopped doing after the issuance of the TRO), then Plaintiff may file a motion for a new TRO and (later) a motion for preliminary injunction. If a new motion for equitable relief were to be filed based on resumed infringing activity, then many of Defendants' current arguments and positions would ring hollow.

of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on October 7, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
The Honorable Kathleen M. Williams
All Counsel of Record